IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NORTHEASTERN DIVISION

SAVANNAH LANE PARTIPILO,  )
                          )
v.                        )        No. 2:13-0060
                          )
CAROLYN W. COLVIN,        )
    Acting Commissioner of    )
    Social Security           )


To: The Honorable Kevin H. Sharp, Chief District Judge


## REPORT AND RECOMMENDATION

The plaintiff filed this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying the plaintiff's claim for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB") as provided by the Social Security Act.

Upon review of the Administrative Record as a whole, the Court finds that the Commissioner's determination that the plaintiff is not disabled under the Act is supported by substantial evidence in the record as required by 42 U.S.C. § 405(g) and that the plaintiff's motion for judgment on the administrative record (Docket Entry No. 14) should be DENIED.


## I. INTRODUCTION

On May 24, 2010, the plaintiff protectively filed for SSI and DIB, alleging a disability onset date of December 3, 2005, due to bipolar disorder, attention deficit disorder ("ADD"), panic attacks, arthritis, degenerative disease, scoliosis, and breathing problems. (Tr. 9, 87-98, 148, 171-72.) Her

applications were denied initially and upon reconsideration. (Tr. 54-57, 60-63, 68-71.) The plaintiff appeared and testified at a hearing before Administrative Law Judge Robert L. Erwin ("ALJ") on October 17, 2011 (tr. 24-49), and amended her alleged onset date to December 31, 2009. (Tr. 36.) On January 26, 2012, the ALJ entered an unfavorable decision. (Tr. 9-19.) On June 19, 2013, the Appeals Council denied the plaintiff's request for review of the hearing decision, thereby making the ALJ's decision the final decision of the Commissioner. (Tr. 1-3.)

## II. BACKGROUND

The plaintiff was born on June 1, 1969, and she was 40 years old as of her amended alleged disability onset date. (Tr. 87.) She attended college but did not graduate and has worked as a mason, a wrestler, and a model. (Tr. 33, 36.)

### A. Chronological Background: Procedural Developments and Medical Records

The plaintiff received outpatient mental health treatment at Plateau Mental Health Center ("Plateau") from January to March, 2010. (Tr. 208-22.) She was diagnosed with attention-deficit hyperactivity disorder ("ADHD"), panic disorder without agoraphobia, and borderline personality

disorder; assigned a Global Assessment of Functioning ("GAF") score of 65;[1] and prescribed, *inter alia*, Xanax, clonidine, Ambien, and BuSpar.[2]  (Tr. 213-15, 217, 222.)

On March 10, 2010, the plaintiff presented to the Cookeville Regional Medical Center ("CRMC") emergency room with shoulder and back pain.  (Tr. 238-43.)  She estimated that her pain was a 4 out of 10 on the pain scale and was treated with Toradol and Decadron.  (Tr. 239, 241.)

She received physical therapy at CRMC from May to June 2010.  (Tr. 227-37.)  At an initial evaluation on May 27, 2010, the plaintiff reported having had scoliosis since she was a teenager.[3] (Tr. 235.)  She said that her back pain radiated down her right leg; increased with bending, prolonged standing, walking, sitting, and wrestling; and decreased with resting and lying.  *Id.*  The physical therapist noted that, upon examination, the plaintiff had "forward head and shoulders, decreased lumbar lordosis, moderate thoracic kyphosis[4] and scoliosis with concavity to the left in the upper to mid thoracic region and compensatory curve with concavity to the right in the upper lumbar to lower thoracic region."  *Id.*  The plaintiff also demonstrated "moderate muscle spasm in the thoracic and

---

[1]  The GAF scale is used to assess the social, occupational, and psychological functioning of adults.  Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders 34 (4th ed. 2000) ("DSM–IV–TR").  A GAF score within the range of 61-70 means that the plaintiff has "[s]ome mild symptoms (e.g., depressed mood and mild insomnia) [or] some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships."  *Id.*

[2]  Xanax is used to treat panic disorder and agoraphobia.  Saunders Pharmaceutical Word Book 768 (2009) ("Saunders").  Clonidine is an antihypertensive.  *Id.* at 170.  Ambien is a sedative and hypnotic for the short-term treatment of insomnia.  *Id.* at 37.  BuSpar is a nonsedating anxiolytic. *Id.* at 116.

[3]  Scoliosis is "an appreciable lateral deviation in the normally straight vertical line of the spine."  Dorland's Illustrated Medical Dictionary 1669 (30th ed. 2003) ("Dorland's").

[4]  Kyphosis is "abnormally increased convexity in the curvature of the thoracic spine as viewed from the side."  Also known as "hunchback."  Dorland's at 986.

lumbar paraspinal muscles with tenderness to palpation," decreased active range of motion in her low back, positive straight leg raises bilaterally, and decreased mobility/ambulation. (Tr. 235-36.) Her sacroiliac joint range of motion was "near normal" bilaterally, and the range of motion in her neck and bilateral shoulders was within functional limits. (Tr. 235.) The physical therapist recommended that the plaintiff receive therapy three times a week for four weeks. (Tr. 237.) The plaintiff attended physical therapy sessions on June 7 and June 9 but did not return. (Tr. 229-31.)

An x-ray of the plaintiff's thoracic spine on April 29, 2010, was abnormal with "marked degenerative arthritis involving thoracolumbar vertebrae" and sclerosis in the lower thoracic vertebrae. (Tr. 224.) Dr. Pushpendra Jain reviewed the x-ray and recommended a CT scan of the thoracic spine, which was taken in June and showed normal paraspinous soft tissues and vertebra. (Tr. 224-25.) An August 25, 2010 MRI showed right thoracic scoliosis with "posterior disc herniation at the T4-5 level with narrowing of the thoracic cord." (Tr. 264.) An x-ray of her lumbar spine on May 20, 2010, revealed "[o]steoarthritis involving multiple lumbar vertebrae mainly L2-L3 and also involving L1." (Tr. 226.)

On July 7, 2010, Dr. Robert Paul, Ph.D., a nonexamining Tennessee Disability Determination Services ("DDS") psychological consultant, completed a Psychiatric Review Technique ("PRT"), and found that the plaintiff had "ADHD (mild/improved);" "[p]anic [disorder] without agoraphobia (improved);" and borderline personality disorder. (Tr. 244-57.) Dr. Paul opined that the plaintiff experienced mild limitation in the activities of daily living; mild limitation maintaining social

functioning; and mild limitation maintaining concentration, persistence, or pace with no episodes of decompensation.[5]  (Tr. 254.)

On August 10, 2010, Dr. Donita Keown, a DDS consultative physician, physically examined the plaintiff.  (Tr. 259-61.)  The plaintiff described her back pain as "constant" and "worsening" and said that it increased with bending, twisting, and lifting.  (Tr. 259.)  She also reported that she had smoked for 27 years and complained of feeling "short-winded."  *Id.*  Upon physical examination, Dr. Keown observed that the plaintiff had kyphoscoliotic curvature convexity of the mid-thoracic spine and a compensatory curve at the thoracolumbar junction.  (Tr. 260.)  In her cervical spine, the plaintiff's rotation was 75 degrees left and 70 degrees right, flexion was 55 degrees, and extension was 40 degrees.  *Id.*  Dr. Keown noted that "[w]hen relaxed, the claimant has the neck flexed at 30 degrees."  *Id.*  The plaintiff had full range of motion in her shoulder joints, bilateral wrist and hand joints, hips, knees, and ankles.  *Id.*  She demonstrated negative seated straight leg raises but had positive supine straight leg raises at 45 degrees.  *Id.*  Her cranial nerves were intact, she had 5/5 strength and 2+ deep tendon reflexes in her extremities, and she was able to perform the straightaway walk, tandem step, toe lift, heel lift, one-foot stand, and Romberg test.[6]  (Tr. 261.)

Regarding the plaintiff's back pain, Dr. Keown's impression was "[k]yphoscoliotic curvature of the thoracolumbar column with chronic complaints of pain, probable degenerative disease.  No objective evidence at this time for herniated disc with neuroforaminal impingement or nerve root

---

[5] On November 23, 2010, Dr. Jeffrey Bryant, Ph.D., a nonexamining DDS psychological consultant, "affirmed" Dr. Paul's assessment.  (Tr. 274.)

[6] A Romberg test is used to detect Romberg's sign, which is "swaying of the body or falling when standing with the feet close together and the eyes closed" and can be "the result of loss of joint position sense, seen in tabes dorsalis and other diseases affecting the posterior columns."  Dorland's at 1702.

crowding." *Id.* Dr. Keown opined that, in an eight-hour workday, the plaintiff could sit eight hours, walk or stand 6-8 hours, occasionally lift 35 pounds, and frequently lift 15-20 pounds. *Id.*

On September 13, 2010, Dr. Karla Montague-Brown, a DDS nonexamining consultative physician, completed a physical Residual Functional Capacity ("RFC") assessment. (Tr. 265-73.) Dr. Montague-Brown opined that the plaintiff could lift and/or carry twenty pounds occasionally and ten pounds frequently; stand and/or walk about six hours in an eight-hour workday; and had no limitations pushing and/or pulling. (Tr. 266.) She also opined that the plaintiff could occasionally climb, balance, stoop, kneel, crouch, and crawl and had no manipulative, visual, communicative, or environmental limitations except for the need to avoid concentrated exposure to fumes, odors, gases, and poor ventilation due to asthma.[7] (Tr. 267-69.)

On July 19, 2011, Dr. Jain completed a lumbar spine RFC questionnaire in which he indicated that he had treated the plaintiff since April 2010 for degenerative arthritis of the spine/degenerative disc disease with scoliosis and lumbar spine convexity. (Tr. 276-79.) He indicated that her symptoms included pain in her low back, shoulder, and neck; numbness and tingling in her legs; abnormal gait; decreased reflexes in her ankles and knees; crepitus in her knees and hips; muscle spasm and weakness; weight gain; and impaired sleep. (Tr. 276-77.) He also indicated that she had a history of bipolar disorder, depression, anxiety, and panic attacks. (Tr. 279.) Dr. Jain opined that the plaintiff could lift up to ten pounds occasionally and twenty pounds rarely, sit about four hours in an eight-hour workday, stand/walk about two hours in an eight-hour workday, and walk less than one block. (Tr. 277-78.) He opined that she could occasionally twist, stoop,

---

[7] On February 2, 2011, Dr. Michael Ryan, a nonexamining DDS consultative physician, "affirmed" Dr. Montague-Brown's assessment. (Tr. 275.)

6

crouch/squat, and climb ladders and stairs; would need to take unscheduled breaks of 15-45 minutes every hour; and would likely miss more than four days of work per month. (Tr. 278-79.)

On August 1, 2011, the plaintiff was seen by Dr. Khan Li for back pain. (Tr. 280-82.) The plaintiff reported that her pain was present in her upper back and right shoulder, had gotten worse in the past year, and was accompanied by intermittent neck pain and numbness in her arms and legs. (Tr. 280.) She was taking hydrocodone-acetaminophen and Flexeril, and she reported that prednisone had "improved" her neck pain and numbness, although it is not entirely clear whether she was taking predisone at the time.[8] *Id.* On exam, she had normal gait and station, and, in her upper extremities, she demonstrated 5/5 muscle strength, full range of motion, and no tenderness to palpation with decreased sensation in the C6 distribution of her right upper extremity. (Tr. 280-81.) In her neck, she had intact sensation, no tenderness to palpation, and normal active range of motion, but paraspinal spasm to palpation, increased kyphosis, and pain on the right side. (Tr. 281.) In her back, she had pain across her low back, paraspinal spasm to palpation, scoliosis with a rib hump on her right side, and limited flexion and extension. *Id.* Dr. Li reviewed x-rays and an MRI of her thoracic and lumbar spine and determined that they showed "kyphoscoliosis[9] with exaggerated thoracic kyphosis," "some thoracic degenerative disc disease," and a "Cobb angle [of] approximately 20 degrees."[10] *Id.* Dr. Li diagnosed the plaintiff with idiopathic scoliosis and kyphoscoliosis and observed that, "in the future, she might benefit from scoliosis correction." *Id.* However, due to the

---

[8] Hydrocodone-acetaminophen is a narcotic analgesic. Saunders at 352. Flexeril is a skeletal muscle relaxant. *Id.* at 294. Prednisone is a corticosteroidal anti-inflammatory. *Id.* at 575.

[9] Kyphoscoliosis is "backward and lateral curvature of the spinal column." Dorland's at 986.

[10] The Cobb angle is "an angle measuring scoliosis as seen on a radiograph." Dorland's at 87.

plaintiff's pregnancy, Dr. Li did not recommend intervention at that time and advised her to follow up in one year.  (Tr. 281-82.)

### B. Hearing Testimony

At the hearing on October 17, 2011, the plaintiff was represented by counsel, and the plaintiff and a vocational expert ("VE"), Jo Ann Bullard, testified.  (Tr. 24-49.)  The plaintiff testified that she attended college and masonry apprenticeship school and that she lives with her husband and two teenage children.  (Tr. 30, 33.)  She said that she has a driver's license but drives "[a]s little as possible."  (Tr. 31-32.)  She worked as a mason, model, and wrestler.  (Tr. 33, 36.)

The plaintiff testified that she was diagnosed with scoliosis as a child but did not have recommended surgery because she did not want to be "incapacitated" and was "afraid of surgery." (Tr. 37.)  She explained that scoliosis has caused "degenerative discs, arthritis, [and] herniated bulging discs" in her spine.  *Id.*  She said that she has a back brace but does not always wear it and that she often has problems getting dressed because she loses her balance.  (Tr. 42, 44.)  She also said that she frequently trips over her right foot when she walks, which she attributed to either scoliosis or a "club foot."  (Tr. 43.)

The plaintiff testified that she has panic attacks approximately once a week, which she characterized as "pretty good."  (Tr. 41.)  She said that in the past she took up to five Xanax pills a day for anxiety and panic attacks.  *Id.*  She explained that she stopped taking Xanax because of her pregnancy but that she still takes it "every once in a while" if she has a panic attack.  *Id.*  She said that she can only get a full night's sleep if she takes Ambien.  *Id.*  She also testified that she uses an inhaler due to problems breathing.  (Tr. 40.)

The plaintiff testified that she does not have any hobbies and does not belong to any churches or clubs but that she has a neighbor who visits. (Tr. 41-42.) She said that she goes grocery shopping "[i]f [she] feel[s] up to it," otherwise, her children or husband shop for the household. *Id.* She said that her family shares the housework, cooking, and laundry but that her "husband does most of it." (Tr. 42.) She said that she spends her time sitting in a recliner or lying down and that she watches television or plays computer games. (Tr. 43.)

The VE classified the plaintiff's past job as a mason apprentice as heavy and skilled, her past job as a wrestler as heavy and skilled, and her past job as a model as light and semi-skilled. (Tr. 46.) The ALJ asked whether a hypothetical person would be able to obtain work if she could perform a limited range of light work, could stand or walk up to six hours in an eight-hour workday; could do no more than occasional climbing, stooping, balancing, crouching, crawling, and kneeling; and needed to avoid concentrated exposure to dust, fumes, smoke, chemical, or noxious gases. *Id.* The VE testified that a person with those limitations could work as a cashier II, office helper, or marker. (Tr. 46-47.)

As a second hypothetical question, the ALJ asked whether a person with these above limitations would be able to obtain work if she were further limited to sedentary work and required a sit/stand option with brief breaks between sitting and standing. (Tr. 47.) The VE replied that a person with these limitations could work as a hand bander, table worker fabricator, or surveillance systems monitor. *Id.* Next, the ALJ asked whether any jobs would be available if this person were also expected to miss three or more days of work per month, and the VE replied that no jobs would be available to such a person. *Id.* In response to questioning by the plaintiff's attorney, the VE testified that there would be no work available to a person who could perform a limited range of light

work but could sit for no more than an hour at a time or four hours total and stand or walk for no more than forty-five minutes at a time or two hours total.  (Tr. 48.)

## III. THE ALJ'S FINDINGS

The ALJ issued an unfavorable ruling on January 26, 2012.  (Tr. 9-19.)  Based upon the record, the ALJ made the following findings:

1.   The claimant meets the insured status requirements of the Social Security Act through December 31, 2015.

2.   The claimant has not engaged in substantial gainful activity since December 31,  2009, the amended alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

\*\*\*

3.   The claimant has the following severe impairments: scoliosis, degenerative disc disease, and asthma (20 CFR 404.1520(c) and 416.920(c)).

\*\*\*

4.   The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

\*\*\*

5.   After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b).  She is able to lift 20 pounds occasionally and 10 pounds frequently.  She can stand/walk for a total of six hours in an eight-hour workday.  She can sit for a total of six hours in an eight-hour workday.  She can occasionally climb, balance, stoop, kneel, crouch, and crawl.  She must avoid concentrated exposure to fumes, odors, dusts, and gases.

\*\*\*

6.   The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7.    The claimant was born on June 1, 1969 and was 36 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8.    The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9.    Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10.    Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

***

11.    The claimant has not been under a disability, as defined in the Social Security Act, from December 31, 2009, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 11-18.)

## IV. DISCUSSION

### A. Standard of Review

The determination of disability under the Act is an administrative decision, and the only questions before this Court are whether the decision of the Commissioner is supported by substantial evidence and whether the Commissioner employed the proper legal standards in reaching her conclusion. 42 U.S.C. § 405(g). *See Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971) (adopting and defining substantial evidence standard in context of Social Security cases); *Kyle v. Comm'r Soc. Sec.*, 609 F.3d 847, 854 (6th Cir. 2010). The Commissioner's

decision must be affirmed if it is supported by substantial evidence, "even if there is substantial evidence in the record that would have supported an opposite conclusion." *Blakely v. Comm'r of Soc. Sec.,* 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)); *Jones v. Comm'r of Soc. Sec.,* 336 F.3d 469, 477 (6th Cir. 2003); *Her v. Comm'r of Soc. Sec.,* 203 F.3d 388, 389-90 (6th Cir. 1999). Substantial evidence is defined as "more than a mere scintilla" and "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401 (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S. Ct. 206, 83 L. Ed. 126 (1938)); *Rogers v. Comm'r of Soc. Sec.,* 486 F.3d 234, 241 (6th Cir. 2007); *Le Master v. Weinberger*, 533 F.2d 337, 339 (6th Cir. 1976) (quoting Sixth Circuit opinions adopting language substantially similar to that in *Richardson*).

A reviewing court may not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility. *See, e.g., Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984) (citing *Myers v. Richardson*, 471 F.2d 1265, 1268 (6th Cir. 1972)). The Court must accept the ALJ's explicit findings and determination unless the record as a whole is without substantial evidence to support the ALJ's determination. 42 U.S.C. § 405(g). *See, e.g., Houston v. Sec'y of Health & Human Servs*., 736 F.2d 365, 366 (6th Cir. 1984).

The Commissioner must employ a five-step evaluation process in determining the issue of disability. *See, e.g., Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001) (citing *Abbot v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990)). The original burden of establishing disability is on the plaintiff, and impairments must be demonstrated by medically acceptable clinical and laboratory diagnostic techniques. *See* 42 U.S.C. § 1382c(a)(3)(D); 20 C.F.R. §§ 404.1512(a), (c), 404.1513(d). First, the plaintiff must show that she is not engaged in "substantial gainful activity" at the time she

seeks disability benefits. *Id.* (citing 20 C.F.R. §§ 404.1520(b), 416.920(b)); *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 539 (6th Cir. 2007). A plaintiff who is performing substantial gainful activity is not disabled no matter how severe the plaintiff's medical condition may be. *See, e.g., Dinkel v. Sec'y of Health & Human Servs.*, 910 F.2d 315, 318 (6th Cir. 1990).

Second, the plaintiff must show that she suffers from a severe impairment that meets the twelve month durational requirement. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). *See also Edwards v. Comm'r of Soc. Sec.*, 113 Fed. Appx. 83, 85 (6th Cir. 2004). A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." *Barnhart v. Thomas*, 540 U.S. 20, 24, 124 S. Ct. 376, 157 L. Ed.2d 333 (2003) (citing 20 C.F.R. §§ 404.1520(c), 416.920(c)). Basic work activities are "the abilities and aptitudes necessary to do most jobs," such as "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; [c]apacities for seeing, hearing, and speaking; [u]nderstanding, carrying out, and remembering simple instructions; [u]se of judgment; [r]esponding appropriately to supervision, co-workers and usual work situations; and [d]ealing with changes in a routine work setting." 20 C.F.R. § 404.1521(b). The Commissioner is required to consider the combined effects of impairments that individually are not severe but cumulatively may constitute a severe impairment. 42 U.S.C. § 423(d)(2)(B); *Foster v. Bowen*, 853 F.2d 483, 490 (6th Cir. 1988).

Third, if the plaintiff is not engaging in substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and her impairment meets or equals a listed impairment, the plaintiff is presumed disabled without further inquiry, regardless of age, education or work experience. 20 C.F.R. §§ 404.1520(d), 416.920(d)). The plaintiff may establish that she meets or equals a listed impairment and that the

13

impairment has lasted or is expected to last for at least twelve months or result in death. *See Listenbee v. Sec'y of Health & Human Servs.*, 846 F.2d 345, 350 (6th Cir. 1988). The plaintiff is not required to show the existence of a listed impairment in order to be found disabled, but such a showing results in an automatic finding of disability. *See Blankenship v. Bowen*, 874 F.2d 1116, 1122 (6th Cir. 1989).

Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, she is not disabled. *Id.* The plaintiff has the burden of proving inability to perform past relevant work or proving that a particular past job should not be considered relevant. *Cruse*, 502 F.3d at 539; *Jones*, 336 F.3d at 474 ("Through step four, the [plaintiff] bears the burden of proving the existence and severity of limitations caused by [her] impairments and the fact that [she] is precluded from performing [her] past relevant work"); *Smith v. Sec'y of Health & Human Servs.*, 893 F.2d 106, 109 (6th Cir. 1989). If the plaintiff fails to carry this burden, she must be denied disability benefits.

Once the plaintiff establishes a *prima facie* case that she is unable to perform her prior relevant employment, the burden of production shifts in step five to the Commissioner to show that the plaintiff can perform other substantial gainful employment and that such employment exists in significant numbers in the national economy. *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (quoting *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997)). *See also Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). To rebut a *prima facie* case, the Commissioner must come forward with proof of the existence of other jobs a plaintiff can perform. *Longworth*, 402 F.3d at 595. *See also Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 528 (6th Cir. 1981), *cert. denied*, 461 U.S. 957, 103 S. Ct. 2428, 77 L. Ed. 2d 1315 (1983) (upholding the validity of the medical-vocational guidelines grid as a means for the Commissioner of carrying

his burden under appropriate circumstances). It remains the plaintiff's burden to prove the extent of her functional limitations. *Her*, 203 F.3d at 391. Even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in significant numbers in the national economy that the plaintiff can perform, she is not disabled. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009). *See also Tyra v. Sec'y of Health & Human Servs.*, 896 F.2d 1024, 1028-29 (6th Cir. 1990); *Farris v. Sec'y of Health & Human Servs.*, 773 F.2d 85, 88-89 (6th Cir. 1985); *Mowery v. Heckler*, 771 F.2d 966, 969-70 (6th Cir. 1985).

If the question of disability can be resolved at any point in the sequential evaluation process, the claim is not reviewed further. 20 C.F.R. § 404.1520(a)(4). *See also Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988) (holding that resolution of a plaintiff's claim at step two of the evaluative process is appropriate in some circumstances).

### B. The Five-Step Inquiry

In this case, the ALJ resolved the plaintiff's claim at step five of the five-step process. At step one, the ALJ found that the plaintiff had not engaged in substantial gainful activity since her amended alleged disability onset date. (Tr. 11.) At step two, the ALJ determined that the plaintiff had the following severe impairments: "scoliosis, degenerative disc disease, and asthma." *Id.* At step three, the ALJ found that the plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 13.) At step four, the ALJ determined that the plaintiff was not able to perform her past relevant work. (Tr. 17.) At step five, the ALJ found that the plaintiff was capable of working as a cashier II, marker, and office helper. (Tr. 17-18.)

## C. The Plaintiff's Assertions of Error

The plaintiff argues that the ALJ erred by: (1) failing to provide good reasons for rejecting Dr. Jain's medical opinion; (2) failing to sufficiently explain his conclusion that the plaintiff's impairments did not meet or equal a listed impairment; and (3) failing to properly assess her credibility.  Docket Entry No. 15, at 5-18.

### 1. The ALJ properly assessed Dr. Jain's opinion.

The plaintiff argues that "[t]he ALJ failed to provide good reasons for rejecting the opinions of Dr. Jain, her treating physician."  Docket Entry No. 15, at 6.

The Regulations provide that the SSA "will evaluate every medical opinion" that it receives. 20 C.F.R. §§ 404.1527(c); 416.927(c).  However, every medical opinion is not treated equally, and the Regulations describe three classifications for acceptable medical opinions: (1) nonexamining sources; (2) nontreating sources; and (3) treating sources.  A nonexamining source is "a physician, psychologist, or other acceptable medical source[11] who has not examined [the claimant] but provides a medical or other opinion in [the claimant's] case." 20 C.F.R. §§ 404.1502, 416.902.  A nontreating source is described as "a physician, psychologist, or other acceptable medical source who has examined [the claimant] but does not have, or did not have, an ongoing treatment relationship with [the claimant]."  *Id.*  Finally, the Regulations define a treating source as "[the claimant's] own physician, psychologist, or other acceptable medical source who provides [the claimant], or has provided [the claimant], with medical treatment or evaluation and who has, or has had, an ongoing

---

[11] The Regulations define acceptable medical sources as licensed physicians, both medical and osteopathic doctors, licensed or certified psychologists, licensed optometrists, licensed podiatrists, and qualified speech-language pathologists.  20 C.F.R. §§ 404.1513(a); 416.913(a).

treatment relationship with [the claimant]." *Id.* An "ongoing treatment relationship" is a relationship with an "acceptable medical source when the medical evidence establishes that [the claimant] see[s], or [has] seen, the source with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for [the claimant's] medical condition(s)." *Id.*

Generally, an ALJ is required to give "controlling weight" to the medical opinion of a treating source, as compared to the medical opinion of a non-treating source, if the opinion of the treating source is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 416.927(c)(2).[12] *See also Tilley v. Comm'r of Soc. Sec.*, 394 Fed. Appx. 216, 222 (6th Cir. 2010); *Hensley v. Astrue*, 573 F.3d 263, 266 (6th Cir. 2009). This is commonly known as the treating physician rule. *See Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004); Soc. Sec. Rul. 96-2p, 1996 WL 374188 (July 2, 1996).

Even if a treating source's medical opinion is not given controlling weight, it is "'still entitled to deference and *must be weighed using all of the factors provided in [20 C.F.R. 416.927] . . . .*'" *Fisk v. Astrue*, 253 Fed. Appx. 580, 585 (6th Cir. 2007) (quoting Soc. Sec Rul. 96-2p, 1996 WL 374188, at *4) (emphasis in original). The ALJ must consider:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) the supportability of the opinion with respect to relevant evidence such as medical signs and laboratory findings; (4) the consistency of the opinion with the record as a whole; (5) the specialization of the physician rendering the opinion; and (6) any other factor raised by the applicant.

---

[12] Effective March 26, 2012, the numbering for the treating physician rules changed. Section 416.927(d)(2) became section 416.927(c)(2), and the identically worded and interpreted section 404.1527(d)(2) became section 404.1527(c)(2). *See Johnson-Hunt v. Comm'r of Soc. Sec.*, 2012 WL 4039752, at *6 n.6 (6th Cir. Sept. 14, 2012).

*Meece v. Barnhart*, 192 Fed. Appx. 456, 461 (6th Cir. 2006) (quoting current 20 C.F.R. § 404.1527(c)(2)-(6)). The ALJ must also provide "good reasons" for the resulting weight given to the treating source. Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *5 (citing current 20 C.F.R. §§ 404.1527(c)(2); 416.927(c)(2)). The "good reasons" must be "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Id.* If an ALJ fails to adhere to this procedural requirement, the case should be remanded for further clarification.[13] *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544-45 (6th Cir. 2004).

After reviewing the specific limitations identified by Dr. Jain in his July 19, 2011, lumbar spine RFC questionnaire (tr. 276-79), the ALJ found as follows:

> Dr. Jain's opinion is given some weight; however, the severity of the limitations is without substantial support from the other evidence of record, which obviously renders it less persuasive. In addition, the opinion is not supported by the physician's own treating record.
>
> The opinion of a treating physician is entitled to substantial weight only if it is supported by sufficient medical data. An Administrative Law Judge is not bound by a treating physician's opinion where there is substantial medical evidence to the contrary. Such opinions are only accorded great weight when they are supported by sufficient clinical findings and are consistent with the record. See *Young v. Secretary of Health and Human Services*, 925 F.2d 146, 151 (6th Cir. 1994). Treating source opinions on issues that are reserved to the Commissioner are not entitled to controlling weight (Social Security Ruling 96-5p).

(Tr. 14.)

---

[13] The rationale for the "good reasons" requirement is to provide the plaintiff with a better understanding of the reasoning behind the decision in her case and to ensure that the ALJ properly applied the treating physician rule. *Wilson*, 378 F.3d at 544 (quoting *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999)).

After reviewing the record, the Court concludes that the ALJ properly assessed Dr. Jain's medical opinion. The ALJ apparently considered Dr. Jain to be a treating source[14] but determined that his opinion was not well-supported and was inconsistent with the other evidence of record and, therefore, not entitled to controlling weight. As noted by the ALJ, Dr. Jain's treatment records are not contained in the record. Dr. Jain indicated in the RFC questionnaire that he had treated the plaintiff since April 2010, and the plaintiff's April and May 2010 x-rays show that they were reviewed by Dr. Jain. (Tr. 224, 226, 276.) Additionally, treatment records from other medical providers contain references to Dr. Jain in which he is described as a "primary care physician" or a "referring physician." (Tr. 237, 259, 280.) However, the record does not contain any treatment records from Dr. Jain or his medical office other than the 2010 x-rays. A treating physician's opinion is only entitled to controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 416.927(c)(2). *See also* Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *1. In this case, the ALJ reasonably concluded that Dr. Jain's opinion was not well-supported because it lacked the support of his own treating record.

In her memorandum, the plaintiff cites certain evidence as originating with Dr. Jain; however, in doing so, the plaintiff incorrectly cites the record. For example, the plaintiff contends that "***Dr. Jain*** proffered an opinion relative to [the plaintiff's] physical restrictions based upon a clinical examination as well as diagnostic imaging of x-rays and an MRI to her thoracic spine. **[TR 280]**[.]" Docket Entry No. 15, at 9-10 (emphasis in original). However, the plaintiff's citation is to the first

---

[14] The Court questions the basis for the ALJ's conclusion that Dr. Jain was a treating source. Given the omission of Dr. Jain's treatment records from the record, it is unclear how the ALJ reached this conclusion. However, because the Court concludes that the ALJ properly assessed Dr. Jain's medical opinion under the more stringent rules applicable to the opinions of treating sources, it is not necessary for the Court to determine whether Dr. Jain was in fact a treating source.

page of another doctor's report, Dr. Khan Li's consultative examination on August 1, 2011, which merely mentions Dr. Jain as the plaintiff's primary care physician. (Tr. 280.) There is no indication that Dr. Jain relied on Dr. Li's report, and, indeed, Dr. Li's examination was performed twelve days after Dr. Jain completed his RFC questionnaire. The plaintiff also contends that Dr. Jain relied on "clinical and diagnostic testing . . . and her physical therapy reports" when completing his RFC questionnaire. Docket Entry No. 15, at 3. However, there is no indication in the questionnaire itself that Dr. Jain relied on such information. (Tr. 276-79.) Dr. Jain indicated that he relied on an MRI of the plaintiff's lumbar and thoracic spine as well as an x-ray of her cervical, thoracic, and lumbar spine (tr. 276), but he did not further specify which radiographs he relied on.

The ALJ also determined that Dr. Jain's opinion was not consistent with other evidence in the record. (Tr. 14.) In particular, the ALJ gave significant weight to Dr. Keown's opinion that the plaintiff could lift 35 pounds occasionally and 15-20 pounds frequently, sit eight hours in an eight-hour workday, and walk or stand 6-8 hours in an eight-hour workday. (Tr. 14, 261.) The ALJ also gave great weight to the opinions of the nonexamining DDS physicians, who opined that the plaintiff could lift and/or carry twenty pounds occasionally and ten pounds frequently; stand and/or walk about six hours in an eight-hour workday; climb, balance, stoop, kneel, crouch, and crawl occasionally; and needed to avoid concentrated exposure to fumes, odors, gases, and poor ventilation. (Tr. 17, 266-69, 275.)

The ALJ chose not to adopt Dr. Jain's opinion, giving it only "some" weight, because Dr. Jain's opinion was not supported by his own treatment notes and was inconsistent with other evidence in the record. (Tr. 14.) These are "good reasons" for discounting Dr. Jain's opinion, and

they are supported by the record. The Court concludes that the ALJ complied with the treating source rule when evaluating Dr. Jain's opinion.

### 2. The ALJ properly determined that the plaintiff did not meet or equal any Listing.

The plaintiff argues that the ALJ "did not provide sufficient analysis supporting his conclusion" that the plaintiff's impairments did not meet or equal any listed impairment. Docket Entry No. 15, at 10. Specifically, the plaintiff contends that the ALJ "failed to consider [her] well-documented kyphosis relative to Listing 14.00." *Id.* at 11 (internal emphasis omitted).

The plaintiff has the burden of proof at step three to demonstrate that she "has or equals an impairment" listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Little v. Astrue*, 2008 WL 3849937, at *4 (E.D. Ky. Aug. 15, 2008) (quoting *Arnold v. Comm'r of Soc. Sec.*, 2000 WL 1909386, at *2 (6th Cir. Dec. 27, 2000)). The plaintiff's impairment must meet all of the listing's specified medical criteria and "[a]n impairment that meets only some of the criteria, no matter how severely, does not qualify." *Sullivan v. Zebley*, 493 U.S. 521, 530-532 (1990). If the plaintiff demonstrates that her impairment meets or equals a listed impairment, the ALJ must find the plaintiff disabled. *Little*, 2008 WL 3849937, at *4 (quoting *Buress v. Sec'y of Health and Human Servs.*, 835 F.2d 139, 140 (6th Cir. 1987)).

The ALJ specifically considered Listing 1.04 (Disorders of the Spine) and found that the plaintiff did not meet the necessary criteria. (Tr. 13.) The ALJ also generally found that the plaintiff did not meet or equal any listed impairment after observing that no treating physician or DDS consultative examiner had opined that the plaintiff's impairments met or equaled a listed impairment.

*Id.* The plaintiff argues that the ALJ erred by failing to specifically address her impairments in the context of sections 1.00L and 14.09 of the listings. Docket Entry No. 15, at 10-14.

In her memorandum, the plaintiff cites the 2005 version of the listings, 20 C.F.R. Part 404, Subpart P, Appendix 1, and then sets out prior, now inapplicable, versions of sections 1.00L and 14.09. *See* Docket Entry No. 15, at 11-12. *See also* Docket Entry No. 22, at 21-25. In pertinent part, the plaintiff incorrectly cites section 1.00L as follows:

> Abnormal curvatures of the spine (specifically, scoliosis, kyphosis and kyphoscoliosis) can result in impaired ambulation, but may also adversely affect functioning in body systems other than the musculoskeletal system. . . . When the abnormal curvature of the spine results in symptoms related to fixation of the dorsolumbar or cervical spine, evaluation of equivalence may be made by reference to *14.09B.*

Docket Entry No. 15, at 12 (citing 20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 1.00L) (emphasis added).

The plaintiff then refers the Court to Listing 14.09B, referenced above, providing, in pertinent part:

> Inflammatory arthritis. Documented as described in 14.00B6, with one of the following:
>
> B. Ankylosing spondylitis or other spondyloarthropathy, with diagnosis established by findings of unilateral or bilateral sacroiliitis (e.g., erosions or fusions), shown by appropriate medically acceptable imaging, with both:
>
> 1. History of back pain, tenderness, and stiffness, and
>
> 2. Findings on physical examination of ankylosis (fixation) of the dorsolumbar or cervical spine at 45° or more of flexion measured from the vertical position (zero degrees)[.]

*Id.* (citing 20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 14.09B).

However, both sections 1.00L and 14.09 were amended effective June 16, 2008, and section 1.00L now provide as follows:

> Abnormal curvatures of the spine (specifically, scoliosis, kyphosis and kyphoscoliosis) can result in impaired ambulation, but may also adversely affect functioning in body systems other than the musculoskeletal system. . . . When the abnormal curvature of the spine results in symptoms related to fixation of the dorsolumbar or cervical spine, evaluation of equivalence may be made by reference to *14.09C.*

20 C.F.R. Pt. 404, Subpt. P, App.1, Listing 1.00L (emphasis added).

Thus, under the current version of section 1.00L, evaluation of equivalency in the case of abnormal curvature of the spine resulting in symptoms related to fixation of the dorsolumbar or cervical spine is made by reference to section 14.09C, which now provides as follows:

> Inflammatory arthritis. As described in 14.00D6. With:
>
> C. Ankylosing spondylitis or other spondyloarthropathies, with:
>
> 1. Ankylosis (fixation) of the dorsolumbar or cervical spine as shown by appropriate medically acceptable imaging and measured on physical examination at 45° or more of flexion from the vertical position (zero degrees); or
>
> 2. Ankylosis (fixation) of the dorsolumbar or cervical spine as shown by appropriate medically acceptable imaging and measured on physical examination at 30° or more of flexion (but less than 45°) measured from the vertical position (zero degrees), and involvement of two or more organs/body systems with one of the organs/body systems involved to at least a moderate level of severity.

20 C.F.R. Pt. 404, Subpt. P, App.1, Listing 14.09C.

It is not clear why the plaintiff cited an out-of-date, plainly inapplicable regulation. The defendant posits that the earlier version of Listing 14.09B is more favorable to the plaintiff because it lacks the specificity of Listing 14.09C. Docket Entry No. 22, at 23-24. In any event, the plaintiff's argument fails under either version because there is no evidence to support fixation of the spine.

Although the plaintiff's medical records show that she has abnormal curvature of the spine (tr. 235, 264, 276, 281), there is nothing in the record to indicate that this abnormal curvature has resulted in symptoms related to fixation of the dorsolumbar or cervical spine. Consequently, the plaintiff fails to meet the threshold criteria set out in section 1.00L. Likewise, the plaintiff has not shown that she meets the specific requirements of Listing 14.09C because she has not shown the necessary fixation of the spine. In her memorandum, the plaintiff points to her examination with Dr. Li, in which Dr. Li diagnosed her with idiopathic scoliosis and kyphoscoliosis, measured her Cobb angle at approximately 20 degrees, and raised the possibility of corrective intervention in the future. Docket Entry No. 15, at 14; (tr. 281). However, these findings are insufficient to satisfy the criteria of Listing 14.09C. A diagnosis of an abnormal curvature of the spine, for example, says nothing about the severity of such a condition, and there is no evidence that the plaintiff's scoliosis and kyphosis have resulted in fixation of the spine. Similarly, a Cobb angle, which is used to measure the degree of scoliosis, is not itself indicative of fixation of the spine.

The plaintiff has failed to establish that she meets or equals the requirements set out in sections 1.00L and 14.09C of the listings. Based on the medical record, there is no evidence that the plaintiff has experienced fixation of the dorsolumbar or cervical spine nor any related symptoms. Further, it was not reversible error for the ALJ to fail to discuss these listings with specificity in his decision. An ALJ is not required to address every listing or to discuss listings that the plaintiff clearly does not meet. *See Sheeks v. Comm'r of Soc. Sec. Admin.*, 544 Fed. Appx. 639, 641-42 (6th Cir. Nov. 20, 2013).

### 3. The ALJ properly assessed the plaintiff's credibility.

The plaintiff argues that the ALJ's credibility determination is not supported by substantial evidence. Docket Entry No. 15, at 14-18.

An ALJ is charged with evaluating the credibility of the plaintiff at the hearing, and the ultimate decision of credibility rests with the ALJ. The ALJ's credibility finding is entitled to deference "because of the ALJ's unique opportunity to observe the claimant and judge her subjective complaints." *See Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001) (internal citations omitted). However, "[i]f the ALJ rejects the claimant's complaints as incredible, he must clearly state his reason for doing so." *Wines v. Comm'r of Soc. Sec.*, 268 F. Supp. 2d 954, 958 (N.D. Ohio 2003) (citing *Felisky v. Bowen*, 35 F.3d 1027, 1036 (6th Cir. 1994)).

Social Security Ruling 96-7p emphasizes that credibility determinations must find support in the record, and not be based upon the "intangible or intuitive notion[s]" of the ALJ. 1996 WL 374186, at *4. In assessing the plaintiff's credibility, the ALJ must consider the record as a whole, including the plaintiff's complaints, lab findings, information provided by treating physicians, and other relevant evidence. *Id.* at *5. Consistency between the plaintiff's subjective complaints and the record evidence "tends to support the credibility of the claimant, while inconsistency, although not necessarily defeating, should have the opposite effect." *Kalmbach v. Comm'r of Soc. Sec.,* 2011 WL 63602, at *11 (6th Cir. Jan. 7, 2011). The ALJ must explain his credibility determination such that both the plaintiff and subsequent reviewers will know the weight given to the plaintiff's statements and the reason for that weight. Soc. Sec. Rul. 96-7p, 1996 WL 374186, at *4.

Both the SSA and the Sixth Circuit have enunciated guidelines for use in analyzing a plaintiff's subjective complaints of pain. *See* 20 C.F.R. § 416.929; *Felisky*, 35 F.3d at 1037. While

the inquiry into subjective complaints of pain must begin with the objective medical record, it does not end there. The Sixth Circuit, in *Duncan v. Secretary of Health and Human Services*, 801 F.2d 847 (6th Cir. 1986), set forth the basic standard for evaluating such claims.[15] The *Duncan* test has two prongs. The first prong is whether there is objective medical evidence of an underlying medical condition. *Felisky*, 35 F.3d at 1039 (quoting *Duncan*, 801 F.2d at 853). The second prong has two parts: "(1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain." *Id.* This test does not require objective evidence of the pain itself. *Duncan*, 801 F.2d at 853 (quoting *Green v. Schweiker*, 749 F.2d 1066, 1071 (3rd Cir. 1984)).

The ALJ satisfied the first prong of the *Duncan* test when he concluded that the plaintiff's medically determinable impairments could reasonably be expected to cause some of her alleged symptoms. (Tr. 15.) Given that the second prong of the *Duncan* test consists of two alternatives, the plaintiff must only meet one of the following two elements: the objective medical evidence "confirms the severity of the alleged pain arising from the condition" or the "objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain." The SSA provides a checklist of factors to assess symptoms, including pain, in 20 C.F.R. § 416.929(c). The ALJ cannot ignore a plaintiff's statements detailing the symptoms, persistence, or intensity of her pain simply because current objective medical evidence does not fully corroborate the plaintiff's statements. 20 C.F.R. § 416.929(c)(2). Besides reviewing medical

---

[15] Although *Duncan* only applied to determinations made prior to 1987, the Sixth Circuit has since held that *Duncan* continues to apply to determinations made after 1987. *See Felisky*, 35 F.3d at 1039 n.2.

records to address the credibility of a plaintiff's symptoms of pain, an ALJ must review the entire

case record in light of the seven factors set forth in 20 C.F.R. § 416.929(c)(3).[16]

Here, the ALJ reviewed the plaintiff's testimony that she is "unable to work due to back pain,

asthma, and panic attacks." (Tr. 15.) He noted that she has had scoliosis since childhood and that

she testified that she "was to suppose [*sic*] to have surgery" but "never had surgery because she was

afraid." *Id.* The ALJ also noted the plaintiff's testimony that she "spends most of the day in her

recliner" and that she "is able to stand for 30 minutes at a time, but she has difficulty walking and

lifting." *Id.*

The ALJ found that:

> In terms of the claimant's impairments, the medical evidence of record does not
> support the severity of pain or functional limitations the claimant has alleged. The
> claimant has not generally received the type of medical treatment one would expect
> for a totally disabled individual. The claimant has not received ongoing treatment
> with a primary physician or specialist. There is no evidence in the record that she has
> received ongoing physical therapy, steroid injections, or has required surgery since
> the alleged onset date. The claimant has not sought or required emergency treatment
> due to asthma exacerbation.

*Id.*

The plaintiff argues that the ALJ reached conclusions that are not supported by the evidence.

Docket Entry No. 15, at 16. First, she argues that she "did indeed intend [*sic*] physical therapy

sessions, but discontinued them because of their limited effectiveness in alleviating her symptoms."

---

[16] The seven factors include: (i) the plaintiff's daily activities; (ii) the location, duration, frequency, and intensity of the plaintiff's pain or other symptoms; (iii) precipitating and aggravating factors; (iv) the type, dosage, effectiveness and side effects of any medication the plaintiff takes or has taken to alleviate pain or other symptoms; (v) treatment, other than medication, plaintiff received or has received for relief of pain or other symptoms; (vi) any measures plaintiff uses or has used to relieve pain or other symptoms (e.g. lying flat on her back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and (vii) other factors concerning the plaintiff's functional limitations and restrictions due to pain or other symptoms. 20 C.F.R. § 416.929(c)(3).

*Id.* The ALJ clearly considered the plaintiff's physical therapy history and in fact devoted an entire paragraph to her treatment at CRMC. (Tr. 16.) However, the ALJ noted that the plaintiff only attended her initial evaluation and two other therapy sessions before discontinuing treatment despite recommendations that she attend three sessions per week for four weeks. *Id.* It was certainly within the ALJ's purview to find that the plaintiff had not received "*ongoing* physical therapy" when she pursued therapy for such a short period of time. *Id.* (emphasis added).

The plaintiff also contends that she did not undergo surgery because she was pregnant. Docket Entry No. 15, at 16. As the plaintiff notes, following an examination on August 1, 2011, Dr. Li diagnosed her with idiopathic scoliosis and kyphoscoliosis and observed that "in the future she might benefit from scoliosis correction." (Tr. 281.) However, Dr. Li advised against corrective intervention at that time due to the plaintiff's pregnancy. *Id.* Despite this evidence, however, the Court is not persuaded that the ALJ erred because the plaintiff testified that she had not pursued surgery in the past because she did not want to be "incapacitated" and was "afraid of surgery." (Tr. 37.) Further, the plaintiff did not seek surgical intervention between her alleged onset date in December 2009 and the start of her pregnancy. These reasons are sufficient to support the ALJ's conclusion that the plaintiff's condition has not necessitated surgery.

Moreover, the ALJ gave several other reasons for finding the plaintiff's allegations not fully credible. The ALJ also found as follows:

> The undersigned is not persuaded that the claimant is wholly credible regarding her alleged functional limitations. The claimant's alleged limitations exceed those that would be associated with the findings of her MRI, CT scan, x-rays, and physical examinations. The record reflects significant gaps in the claimant's treatment history. The undersigned notes that the claimant was working as a model/wrestler after the alleged onset date. She indicated during her physical therapy visit that she continued to have a very active lifestyle. In addition, the claimant is currently

pregnant, which tends to suggest her symptoms are not as limiting as she alleges. The claimant is capable of handling her own personal care, preparing simple meals, performing light household chores, going shopping, playing games on the computer, paying bills, and driving a vehicle. . . . These activities are consistent with a broad range of activities of daily living. Taken together, these activities of daily living are given significant weight as to the claimant's ability to sustain substantial gainful activity.

(Tr. 16.)

In her memorandum, the plaintiff completely ignores these reasons in arguing that the ALJ's credibility analysis is not supported by substantial evidence. As demonstrated above, the ALJ set forth a detailed analysis evaluating several of the factors in 20 C.F.R. §§ 405.1529(c)(3) and 416.929(c)(3) and concluding that the plaintiff's subjective complaints of pain are not disabling. (Tr. 15-16.) The ALJ addressed, *inter alia*, the plaintiff's daily activities; the location, duration, frequency, and intensity of her symptoms; and the medical treatment she received. *Id.* The ALJ's assessment complies with *Duncan*, Social Security Ruling 96-7p, and 20 C.F.R. §§ 404.1529 and 416.929.

## IV. RECOMMENDATION

For the above stated reasons it is recommended that the plaintiff's motion for judgment on the administrative record (Docket Entry No. 14) be DENIED and that the Commissioner's decision be affirmed.

Any objections to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days of service of this Report and Recommendation, and must state with particularity the specific portions of this Report and Recommendation to which the objection is made. Failure to file written objections within the specified time can be deemed a waiver of the right

to appeal the District Court's Order regarding the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

Respectfully Submitted,

JULIET GRIFFIN
United States Magistrate Judge